UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID OSUCH,<br>    Plaintiff, | :<br>:   CASE NO. 3:18cv846(JCH)<br>: |
| v. | :<br>: |
| CASEY ST. JOHN,<br>    Defendant. | :   OCTOBER 31, 2018<br>:<br>: |

### INITIAL REVIEW ORDER

The plaintiff, David Osuch ("Osuch"), was confined at Osborn Correctional Institution ("Osborn") when he filed his pro se complaint, pursuant to section 1983 of title 42 of the United States Code, against Casey St. John, MH-RN ("St. John"). On August 20, 2018, he filed a Notice of a Change of Address indicating that he now resides in Stamford, Connecticut.

For the reasons set forth below, the Complaint is dismissed.

**I.  Standard of Review**

Pursuant to section 1915A(b) of title 28 of the United States Code, the court must review prisoner civil complaints against governmental actors and dismiss any portion of a complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint that includes only "labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement" does not meet the facial plausibility standard. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007) (alterations omitted)). Although courts interpret a pro se complaint liberally, the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

**II.     Facts**

Osuch alleges that, on January 29, 2018, prison officials at Osborn released him "on Mental Health [U]nit Parole with a Mental Health Parole officer to a work release Halfway [House] in Hartford [called Cheney House]." See Compl., (Doc. No. 1) ¶ 7. At the time of his discharge, Osuch suffered from post-traumatic stress disorder, bipolar disorder, major depression disorder, borderline personality disorder, paranoid personality disorder, and general anxiety disorder. Id. ¶ 8. During Osuch's confinement at Osborn, Dr. Lawlor had prescribed four medications to treat these disorders. See id. ¶¶ 12–13. Osuch claims that he cannot function properly without the medications. Id.

Under State of Connecticut Department of Correction Administrative Directive 8.1(6)(E), the Department of Correction and "the contracted health services provider

2

shall designate a discharge planner for each [health services] unit whose sole responsibilities shall be implementing the discharge planning process." See id. ¶ 10. Upon discharge from the Department of Correction, inmates "shall receive, at a minimum, a two-week supply of medication packaged in a tamper proof container." Id. Administrative Directive 8.5(12)(C) similarly provides that "[a] psychiatrist or APRN with psychiatric certification shall order, no less than a 14 day supply of all prescribed psychotropic medication to accompany an inmate upon discharge, community supervision, [p]arole or furlough." See id. ¶ 11.

Osuch claims that St. John, who is a nurse at Osborn, is responsible for assuring that Level 3 inmates are discharged from the Department of Correction with their medications. See id. ¶ 9. On January 29, 2018, prison officials discharged Osuch without his mental health medications. See id. ¶ 8.

Upon his release, Osuch went to Cheney House and requested his mental health medications. See id. ¶ 14. Staff at Cheney House staff informed Osuch that they had only been given medications to treat his medical conditions. See id. Osuch traveled to Hartford Hospital to speak to a doctor in an effort to get his medications. See id. ¶ 15. A physician issued him a prescription for his medications for three days. See id.

Osuch then traveled to the Wheeler Treatment Clinic to speak to a doctor in an effort to get a prescription for his medications when the three-day prescriptions ran out. See id. ¶ 16. He met with a social worker who had treated him previously, and she assigned Osuch to a psychiatric nurse who had also treated him previously. See id. ¶ 17. The earliest appointment available with the psychiatric nurse was on March 21, 2018. See id. ¶ 17. Osuch returned to the halfway house and informed the director, his

3

case manager, his parole officer, and his parole officer's supervisor that he had been discharged without his mental health medications and that he needed the medications to function properly. See id. ¶ 18.

On February 1, 2018, Osuch returned to Hartford Hospital to pick up medications. See id. ¶¶ 19–20. An emergency room doctor told Osuch that he must find another mental health provider to treat him until his appointment with the psychiatric nurse on March 21, 2018, because the hospital could not keep filling his prescriptions. See id. ¶ 20.

On February 2, 2018, Osuch traveled to Charter Oak clinic. See id. ¶ 21. He met with Dr. Pillai, a physician who worked part-time at MacDougall Correctional Institution. See id. ¶ 22. On February 6, 2018, Osuch traveled to Hartford Hospital to pick up his medication. See id. ¶ 23. An emergency room doctor filled his prescription for one medication for three days and the other three medications for a week. See id. ¶ 24. The physician told him that he must find another mental health provider to treat him until his appointment with the psychiatric nurse on March 21, 2018, because he could not keep filling his prescriptions. Id.

On February 8, 2018, Osuch traveled to the Charter Oak Clinic to meet with Dr. Pillai. See id. ¶ 26. When he arrived, staff informed him that his appointment had been changed, and he was to meet with Dr. Lye. See id. Osuch does not allege whether he met with Dr. Lye at that time.

Osuch claims that he suffers from the following symptoms when he does not take his medications: panic attacks, anxiety attacks, flashbacks, loss of concentration and sleep, racing thoughts and experiences feelings of paranoia, hopelessness,

4

helplessness, fear of other people and suicidal thoughts. See id. ¶ 25. When he learned that he would not be meeting with Dr. Pillai, Osuch became overwhelmed and had a serious panic attack, which caused him to become confused and unable to focus or concentrate. See id. ¶ 27. He did not know what to do or whom to speak to about his situation. See id. He claims that he had a complete mental, emotional, and physical breakdown and started walking the streets of Hartford. See id.

Osuch was without his mental health medications for two weeks and ended up at his sister's house in Stamford, Connecticut. See id. ¶¶ 28–29. On April 23, 2018, Osuch's parole officer and a Stamford Police Officer picked up Osuch at his sister's house, took him into custody, and remanded him to Bridgeport Correctional Center. See id. ¶¶ 29–30. He was treated in the mental health infirmary at Bridgeport Correctional Center for five days. See id. ¶ 31.

A parole revocation hearing was held on March 14, 2018. See id. ¶¶ 32. The hearing officer determined that the violations of the conditions of his parole were serious enough to warrant further proceedings. See id. ¶ 33.

On March 15, 2018, prison officials at Bridgeport Correctional transferred Osuch to Osborn. See id. ¶ 34. On May 19, 2018, a parole officer recommended that he be considered for re-parole in six months. See id. ¶ 37.

Osuch states that he was previously released on parole from Garner Correctional Institution on April 13, 2017. See id. ¶ 36. Osuch claims that prison officials released him without his two-week supply of his mental health medications. See id. ¶ 38. Osuch was unable to meet with a psychiatrist at the Wheeler Clinic because the psychiatrist was out for two weeks and there was no one else to prescribe his medications. See id.

5

During that two-week period, Osuch had to go to the hospital every three days to get his mental health medications re-prescribed or re-filled. See id. ¶ 38. He was subsequently able to see a mental health prescriber and his medications were in order as of May 25, 2017. See id. at 12. At some point, he was remanded back to the custody of the Department of Correction for four months. See id. ¶ 40.

## III. Discussion

Osuch contends that St. John was responsible for making sure his mental health medications had been prescribed and had been given to him before his release to the halfway house. He claims that the defendant's failure to make sure that his mental health medications were available to him upon his release on January 29, 2018, caused him to suffer a complete breakdown which resulted in violations of the conditions of his parole and his remand back to the custody of the Department of Correction. Osuch seeks monetary damages from the defendant in her individual capacity and injunctive relief "in [the] way of directive review and protocols to be put into place[] to ensure [an] inmate[']s discharge psychiatric medications are in the inmates' property upon discharge. . . . or other procedures are [implemented] to ensure an inmate can receive medications, without going to [a] hospital." Compl. at 8–9.

### A. Eighth Amendment Claim

Osuch alleges that St. John violated his rights under the Eighth Amendment to be prescribed medications to treat his mental health conditions. He also claims that the conduct of the defendant constituted negligence under state law.

Deliberate indifference by prison officials to a prisoner's serious medical or mental health needs constitutes cruel and unusual punishment in violation of the Eighth

6

Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Atkins v. County of Orange, 372 F.Supp.2d 377, 408 (S.D.N.Y.2005) ("In the Second Circuit, it is equally clear that psychiatric or mental health care 'is an integral part of medical care' and falls under the rule laid out in Estelle which requires that such care be provided to prisoners.")  There is a subjective and an objective component to the deliberate indifference standard.  See Salahuddin v Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

Objectively, the inmate must allege that the deprivation of medical care was "sufficiently serious."  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition.  Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003).  However, the Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

"In cases where the inadequacy is in the medical treatment given," as opposed to a complete absence of treatment, "the seriousness inquiry is narrower."  Salahuddin, 467 F.3d at 280.  Thus, if a prisoner alleges that he has been "receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'"  Id. (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003).  Stated differently, it is "the

7

particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).

Subjectively, the inmate must allege that the defendant prison official "act[ed] with a sufficiently culpable state of mind." Id. (citation omitted). Thus, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions and have disregarded that risk. Id. Even if a prison official or medical staff member "actually knew of the substantial risk to inmate health and safety," he or she "may be found free from liability, [however], if [he or she] reasonably responded to the risk, even if the harm ultimately was not avoided." See Farmer v. Brennan, 511 U.S. 825, 844 (1994). Allegations of malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir.1996).

Although Connecticut Administrative Directives 8.1 and 8.5 provide that inmates shall receive a minimum two-week supply of mental health medications prior to discharged to parole or community supervision, a violation of a state law or regulation, on its own, does not constitute a violation of a federally or constitutionally protected right. See Flynn v. Ward, No. 9:15-CV-1028(GLS/CFH), 2015 WL 8056060, at *4 (N.D.N.Y. Dec. 4, 2015) ("Failure to follow a DOCCS Directive does not give rise to a § 1983 claim. Consequently, these claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted."); Cusamano v. Sobek, 604 F. Supp. 2d 416, 482 (N.D.N.Y. Jan. 26, 2009) ("A violation of a state law or

8

regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983.") (collecting cases); Fernandez v. Armstrong, No. 3:02-CV-2252(CFD), 2005 WL 733664, at *9 (D. Conn. Mar. 30, 2005) ("This district has previously held that failure of a correctional official to comply with the institutional grievance procedures [set forth in Administrative Directive 9.6] is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right."); Hyman v. Holder, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim). Because a failure to follow a Department of Correction directive does not give rise to a section 1983 claim, any claim based on St. John's alleged violation of Administrative Directives 8.1 and 8.5 is dismissed pursuant to section 1915A(b)(1) of title 28 of the United States Code for failure to state a claim upon which relief may be granted.

Courts have held, however, that prison officials have an affirmative duty under the Eighth Amendment to provide for a prisoners basic human needs, including food, clothing, shelter and medical care immediately after release from prison. See Jacobs v. Ramirez, 400 F.3d 105, 106 (2d Cir. 2005) ("[W]e cannot say that Jacobs has failed to state a claim that his placement in an allegedly uninhabitable home violated the state's affirmative duty to assume some responsibility for his safety and general well-being while he remained under its supervision and subject to the restrictions of parole") (quotation marks omitted); Lugo v. Senkowski, 114 F. Supp. 2d 111, 115 (N.D.N.Y. 2000) (holding that "[t]he State has a duty to provide medical services for an outgoing prisoner who is receiving continuing treatment at the time of his release for the period of

9

time reasonably necessary for him to obtain treatment 'on his own behalf.'") (citing Wakefield v. Thompson, 177 F.3d 1160, 1164 (9th Cir.1999) (holding that "the state must provide an outgoing prisoner who is receiving and continues to require medication with a supply sufficient to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply.")).

Even if the court assumes that St. John had a duty under the Eighth Amendment to make sure Osuch was released with a supply of his mental health medications, the court must also examine whether the deliberate indifference to mental health or medical needs standard has been met. See Lugo, 114 F. Supp. 2d at 115 ("Although this Court holds that a duty to protect Plaintiff exists under these circumstances, Plaintiff still must establish that both prongs of the Farmer analysis have been satisfied.")

Osuch alleges that, at the time of his discharge from Osborn on January 29, 2018, he had been diagnosed as suffering from multiple, serious mental health conditions, and had been treated by Dr. Lawlor who had previously prescribed four medications to treat his mental health conditions. Osuch also alleges that he cannot function without his medication. Compl. ¶ 25. Osuch claims that, after his discharge, he was able to secure new prescriptions for his medications from January 29, 2018, until at least February 8, 2018, but that during the next fourteen days when he was not taking his mental health medications, he suffered symptoms including panic attacks, anxiety attacks, flashbacks, loss of concentration and sleep, racing thoughts, feelings of paranoia, hopelessness, helplessness, fear of other people, and thoughts of suicide. See Compl. ¶ 25. At some point, after walking the streets of Hartford, he ended up at

10

his sister's house in Stamford and was picked up there on February 23, 2018, by his parole officer. The court concludes that Osuch plausibly alleged that the deprivation of his mental health medication upon discharge from Osborn was, objectively speaking, sufficiently serious to constitute a deprivation of constitutional rights.

While Osuch plausibly alleged a sufficiently serious deprivation of medical care, he has not alleged facts to satisfy the second, subjective prong of the Eighth Amendment deliberate indifference test. That is, Garcia has not plausibly alleged that St. John was deliberately indifferent to the risk to Garcia's health posed by a failure to provide Garcia with medication upon discharge from Osborn. The exhibits attached to the Complaint reflect that, as of 11:42 a.m. on January 28, 2018, Melissa/Mimi Pugh, who is a nurse and a discharge planner at Osborn, sent an email to St. John, MH-RN at Osborn indicating that she had become aware that Osuch had left the facility earlier that day before she had "received a release on him." Compl., at 10. Nurse Pugh informed St. John that Osuch needed to have his discharge medications ordered and asked her to order them. Nurse Pugh indicated that she would fax a voucher to Osuch's parole officer and would order the medications to treat Osuch's medical conditions.

At 11:59 a.m., St. John forwarded Nurse Pugh's email to Carol Whelan, who worked at the University of Connecticut Health Center ("UCONN"). At 12:07 p.m., Carol Whelan sent an email to St. John, Melissa/Mimi Pugh, Martha Brown, and Richard Furey, indicating that Martha Brown would be handling the situation because Osuch had no prescriber at UCONN and that Martha Brown would be contacting Osuch's parole officer in order to get Osuch to an urgent care facility as soon as possible. Carol Whelan indicated that Dr. Berger was aware of the situation and was in agreement.

It is apparent from the emails that St. John is not a discharge planner at Osborn on January 29, 2018. In addition, it seems clear that, when Nurse Pugh, who was a discharge planner at Osborn on that date, became aware that Osuch had been discharged before his mental health or medical medications had been ordered, she contacted St. John who then contacted Carol Whelan at UCONN. Whelan made arrangements to have Martha Brown handle the situation and to contact Osuch's parole officer. Based on these emails, it does not appear that St. John was responsible for releasing Osuch without his medications and that, when she became aware of this fact, she took steps to resolve the problem by contacting a Connecticut employee at UCONN. Shortly after contacting Carol Whelan, St. John learned that someone else would be handling the situation involving Osuch's mental health medications.

Osuch does not allege that St. John was aware of or had treated him for his various mental health disorders prior to his discharge on January 29, 2018, or that she was aware that he was to be discharged on that date. The emails suggest that the release of Osuch without his two-week supply of medications was not intentional, but was due to the fact that the discharge planner did not get notice that Osuch was to be released in time to ensure that his mental health and medical medications had been ordered and provided to him at the time he left Osborn to go to the halfway house. Thus, at most, his release without his medications was due to negligence rather than deliberate indifference. "[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." Chance, 143 F.3d at 703 (citing Estelle, 429 U.S. at 105–06). Osuch has not alleged that St. John had knowledge of a substantial risk of harm to him and failed to take measures to avoid the

harm. See Farmer, 511 U.S. at 837 (holding that an official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

The court concludes that Osuch has not stated a plausible claim that St. John was deliberately indifferent to his serious mental health needs. The Eighth Amendment deliberate indifference claim is dismissed. See 28 U.S.C. § 1915A(b)(1).

### B. Deprivation of Liberty

Osuch's only federal claim is that St. John violated his Eighth Amendment rights. He makes no mention of the Fourteenth or any other Amendment. Yet, in his description of his claim for relief, Osuch mentions a loss of liberty due to his remand back to the custody of the Department of Correction on February 23, 2018. See Compl. ¶ 41. Osuch provides no explanation for the basis of his parole officer's decision to remand him to custody. He simply states that his parole officer learned that he was at his sister's house in Stamford, came to pick him up there on February 23, 2018, and remanded him back to Bridgeport Correctional Center later that day. To the extent that Osuch is attempting to allege that St. John was responsible for his remand to the Department of Correction, there are no facts to support this claim.

The court has concluded that the exhibits submitted by Osuch reflect that St. John was not responsible for his release by prison officials before his mental health medications had been ordered and provided to him. Once it was discovered that Osuch had been released without his mental health medications, steps were taken by St. John to make a UCONN official aware of the situation and that UCONN official then made

13

arrangements to have another individual handle the situation in order to ensure that Osuch gained access to the medications that he required during his release. Thus, any claim that St. John was somehow responsible for Osuch's subsequent remand to custody is speculative and not supported by the facts. The claim that St. John deprived Osuch of his liberty due to his remand to the Department of Correction on February 23, 2018 is dismissed. See 28 U.S.C. § 1915A(b)(1).

### C     State Law Claims

Osuch contends that, in addition to deliberate indifference, the conduct of St. John constituted negligence under Connecticut law. Because the court has dismissed the federal claim asserted by Osuch, it declines to exercise supplemental jurisdiction over any state law claims, including the claim for negligence. See 28 U.S.C. 1367(c)(3) (permitting a district court to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006) ("It is well-settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.") (citations omitted).

## ORDERS

The court enters the following order:

(1)     The Eighth Amendment deliberate indifference to mental health needs claim, the claim that St. John violated Connecticut Administrative Directives, and the claim that St. John deprived Osuch of his liberty due to his remand to the Department of Correction on February 23, 2018 are **DISMISSED** pursuant to section 1915(A)(b)(1) of

title 28 of the United States Code. The court declines to exercise supplemental jurisdiction over any state law claims, including the claim for negligence. See 28 U.S.C. 1367(c)(3). The court grants Osuch leave to file an amended complaint as to his Eighth Amendment claim against St. John, his claim that he was unconstitutionally deprived of his liberty, and his claim of state law negligence against St. John, no later than November 30, 2018, if he has a sufficient legal and factual basis to do so.

**SO ORDERED**.

Dated at New Haven, Connecticut this 31st day of October, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge